[Crim. No. 7609.    Second Dist., Div. Four.    June 14, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ALAN BENJA-MIN LUCKMAN, Defendant and Appellant.

James T. Perona, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In a trial by jury, defendant was convicted of grand theft in violation of Penal Code section 487, subdivision 1. Defendant waived his right to counsel and appeared at the trial in propria persona. A prior felony conviction of grand theft was alleged in the information, and the jury found such conviction, as alleged, to be true. Probation was denied and defendant was sentenced to state prison for the statutory term. Defendant originally appealed from the judgment in propria persona, the judgment of conviction was affirmed by this court on December 21, 1961 (in *People* v. *Luckman*, 198 Cal.App.2d 347 [18 Cal.Rptr. 167]), and a petition for a hearing was denied by the California Supreme Court on February 14, 1962. Thereafter, the United States

Supreme Court handed down its decision in *Douglas* v. *California*, 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811]. The remittitur has been recalled and counsel appointed to represent defendant on this appeal.

William Cheney was the owner of a 1959 model Corvette house trailer valued at approximately $950. He discovered that it was missing on September 26, 1960, and reported the loss to the police. Three days later the trailer was found by Officer Baker and Officer Parker. The officers discovered that the serial number on the tongue of the trailer had been covered by a thick aluminum substance and other identifying marks had been painted over with aluminum paint. Defendant was observed lying down inside the trailer.

Officer Baker testified that the following events then occurred: When the officers inquired, defendant stated that he owned the trailer. He thereupon presented a bill of sale indicating the trailer was manufactured in 1957 and stated he had been living in it for about two years. Officer Baker then asked defendant, when, in 1957, he had purchased the trailer. Defendant answered, "Somewhere around September." The officer then stated that it seemed a little odd that defendant had owned a trailer since 1957 that was not manufactured until 1959. Defendant made no response. He was then placed under arrest and his automobile, which was parked directly in front of the trailer, was searched and found to contain a can of aluminum paint, a brush and a tube of liquid solder. Later, at the police station, Officer Baker again asked defendant when he had purchased the trailer and defendant said that he bought it in 1957. When the officer again replied that "it was built in 1959,"defendant said, "Well, when there's no bread on the table love flies out the window."

Officer Webb testified that, on the morning of defendant's arrest, he had a conversation with defendant in the police station regarding defendant's "ownership or possession" of the trailer. The officer asked defendant where he got the trailer and defendant replied that on the weekend before he had been shopping at a market in Reseda. Two men came up to him and asked if he wanted to buy a house trailer. He told them that although he did not have enough money he would like to have one because he was living in his car. The men told him that he wouldn't need much money. They then drove him to White Oak and Sherman Way where he saw the trailer in question. He purchased the trailer from the men for $25 cash and some clothing. They gave him a bill of sale. Officer

Webb then asked defendant how he accounted for the fact that the bill of sale stated it was sold to defendant on October 27, 1957, when the trailer was stolen only the week before; and for the fact that the bill of sale stated that the purchase price was $775, when defendant had said it cost him only $25. Defendant replied, ''Well, there were some mistakes made on the bill of sale.''

In regard to the statements made by defendant to the police officers, we conclude that *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] does not compel the reversal of the judgment. In *Dorado* the court determined that, when an investigation has focused on a particular suspect, he is in custody and is the subject of an accusatory interrogation, then he must be advised of his constitutional rights to counsel and to remain silent; that, if he is not so advised, and no evidence establishes a waiver of these rights, any confession or incriminating statement made under such circumstances is inadmissible.

█ While the initial statement made by defendant when first confronted in the house trailer by Officers Parker and Baker, namely, that he had purchased the trailer in 1957 and had lived in it for two years, was certainly incriminating in light of the evidence that the trailer was not manufactured until 1959, *Dorado, supra,* does not apply, because defendant was not yet in custody nor was he being subjected to an accusatory type of interrogation.

█ Neither do we regard *Dorado* as applicable to defendant's statements at the police station to Officers Baker and Webb. While defendant clearly was in custody at the time he made these statements, the questions asked by the officers, which elicited the statements, do not show an undertaking by the officers of ''a process of interrogations that lends itself to eliciting incriminating statements.'' (*Escobedo* v. *Illinois,* 378 U.S. 478, 491 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *People* v. *Stewart,* 62 Cal.2d 571, 579 [43 Cal.Rptr. 201, 400 P.2d 97].) Rather, the questions were asked as part of the officers' investigation into, as yet, an unsolved crime. Defendant was taken into custody only a few hours before. Although he obviously was considered the prime suspect, the purpose behind the questions was to give defendant a chance to explain, as one of the questioning officers put it, ''defendant's ownership or possession'' of the trailer. █ Furthermore, even if we consider the conditions for the application of the four-point *Dorado* test to be met, thus rendering the statements de-

fendant made at the police station inadmissible, we do not regard the error in their admission to be prejudicial. In large part they were merely a reiteration of the previous statement defendant made prior to his arrest.

What defendant meant by his remark "Well, when there's no bread on the table love flies out the window," which was made after Officer Baker had asked defendant how he could have purchased a trailer in 1957 which was not manufactured until 1959, is unclear. Under such circumstances we cannot construe such comment to be in the nature of a confession or admission.

The deputy district attorney (in his argument), and the court (in giving California Jury Instruction Criminal [CALJIC] number 51), commented upon defendant's failure to testify. Such comment, while permissible at the time this case was tried (Cal. Const., art. I, § 13) is now held to be in violation of the self-incrimination clause of the Fifth Amendment of the Constitution of the United States as made applicable to the states by the Fourteenth Amendment. (*Griffin* v. *California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.E.2d 106] decided April 18, 1965, (No. 202, Oct. term 1964); *Malloy* v. *Hogan,* 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653].) However, the recent California Supreme Court decision in *People* v. *Bostick,* 62 Cal.2d 820 [44 Cal.Rptr. 649, 402 P.2d 529], decided June 3, 1965, in interpreting the import of the *Griffin* decision, determined that, unless the error in commenting on defendant's failure to testify resulted in a miscarriage of justice within the meaning of article VI, section 4½ of our Constitution, a reversal was not required. We find no miscarriage of justice here. We have examined "the entire cause, including the evidence" in the case before us which we have set forth above, and we are not of the opinion that it is "reasonably probable" that a result more favorable to defendant would have been reached in the absence of the error. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]; Cal. Const., art. VI, § 4½.)

The judgment of conviction is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied June 30, 1965, and appellant's petition for a hearing by the Supreme Court was denied August 11, 1965. Mosk, J., did not participate therein.